UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
SYED ZAIDI,

               MEMORANDUM AND ORDER

          Plaintiff,              CV 08-776
        -against-              (Wexler, J.)

THE AMERADA HESS CORP., et al.,

             Defendants.
--------------------------------------------------------X
APPEARANCES:

      Law Offices of Frederick K. Brewington
      By:    Frederick K. Brewington, Esq.
             Valerie M. Cartright, Esq.
      Attorneys for Plaintiff
      50 Clinton Street, Suite 501
      Hempstead, New York 11550

      Friedman Kaplan Seiler & Adelman LLP
      By: Lance J. Gotko, Esq.
      Attorneys for The Amerada Hess Corporation and
      the Individual Amerada Hess Defendants
      1633 Broadway
      New York , NY 10019

      The Office of the Suffolk County Attorney
      By: Richard T. Dunne, Esq. Assistant Suffolk County Attorney
          Susan A. Flynn, Esq. Assistant County Attorney
      Attorneys for Suffolk County and the Individual Suffolk County Defendants
      Suffolk County Department of Law
      H. Lee Dennison Building
      100 Veterans Memorial Highway
      Hauppauge , NY 11788

WEXLER, District Judge

      This is an action commenced by Plaintiff Syed Zaidi ("Plaintiff") alleging civil rights and

state law causes of action arising out of Plaintiff's arrest and ultimate acquittal of criminal

larceny charges. Those charges were brought in connection with allegations of theft from Amerada Hess Corporation ("Hess"), Plaintiff's former employer. In addition to naming the County of Suffolk and several public employees as Defendants, Plaintiff names Hess, and five of his former supervisors and/or co-workers as Defendants (the "Hess Defendants"). Presently before the court is the Hess Defendants' motion, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment.[1]

BACKGROUND

I.     The Parties

Plaintiff, who is not a citizen of the United States, was born in Pakistan and identifies himself as a Shiite Muslim. In July of 2005, Plaintiff began his employment at a Hess convenience store, located within a Hess gas station in Suffolk County, New York. At that time, Plaintiff was lawfully in this country pursuant to a ten year visa. Plaintiff remained employed by Hess as a sales associate until his termination in February of 2006.

The individual Hess Defendants are Donna Parinello ("Parinello"), Sandy Salit ("Salit"), Robert Lafalce ("Lafalce"), Joann Salentino ("Salentino") and Rashein Gillard ("Gillard"). Each of these individuals was employed by Hess at the same gas station where Plaintiff was employed. Defendant Parinello was, at all relevant times, a Hess Marketing Representative. Her duties included supervision of thirteen Hess gas stations, including the station where Plaintiff was employed. As part of her job, Parinello was involved in financial audits of the stations that she

---

[1]     The Hess Defendants move pursuant to Rule 12(c) of the Federal Rules of Civil Procedure for judgment on the pleadings, as well as for summary judgment. In view of the fact that the parties have taken the full opportunity to submit deposition testimony and documents produced during discovery, the court treats this solely as a Rule 56 motion for summary judgment.

supervised. Defendant Salentino was an assistant manager, and is alleged to have been Plaintiff's immediate supervisor. The remaining Hess Defendants were co-workers of Plaintiff. All of the Hess Defendants are alleged to have been aware of Plaintiff's race and religion.

II.    The Incident Immediately Preceding Plaintiff's Termination and Subsequent Arrest

The Hess store where Plaintiff was employed sold typical convenience items such as soda and cigarettes. The store also sold lottery tickets. Prior to the incident that led to Plaintiff's termination, he was a trusted employee. In fact, Plaintiff received a salary increase in excess of company guidelines six months after he began his employment. As noted, Plaintiff was terminated from his position at Hess in February of 2006. The facts immediately preceding that termination form the basis of his complaint as against the Hess Defendants.

Defendant Parinello states that on February 15, 2006, a quarterly audit was conducted. That audit, undertaken by an outside company, revealed that for the period of November 25, 2005 through February 15, 2006, the Hess station where Plaintiff worked was missing $4,545.84 in revenue from the sale of instant lottery tickets. There is no factual question as to the results of the audit, which are not contested by either side. Plaintiff was identified by Parinello as the party responsible for the shortfall. Parinello states that she reached this conclusion based upon her review of Hess documents revealing that little or no lottery sales had been recorded during Plaintiff's shifts. She explains that this documentation led her to believe that Plaintiff stole the lottery tickets at issue.

Shortly after reviewing the results of the audit, Parinello called Plaintiff and asked him to come to the station. When Plaintiff arrived at the station, Parinello was present, along with Defendants Lafalce and Gillard. Upon his arrival, Plaintiff was accused of stealing the missing

3

$4,545.84. It is at this point that the parties' versions of the facts begin to differ. Parinello states that Plaintiff admitted to the theft. She further states that she told Plaintiff that if he agreed to pay back the missing money, she would not involve the police. Plaintiff is alleged to have agreed to pay back the missing money. He is further alleged to have voluntarily written a statement, in English, acknowledging the theft, and agreeing to repayment. That statement is before the court. It is signed by Plaintiff and indicates Parinello, Lafalce and Gillard as witnesses.

Plaintiff alleges that the Hess Defendants "knowingly and falsely accused" Plaintiff of stealing money. Although he states that he has problems understanding English, Plaintiff acknowledges the existence of the statement in which he agreed to pay back the stolen money, and that the statement was written and signed by him. He states, however, that he was unaware that he was being accused of theft, and was told that if he did not sign the statement he would be held accountable for all shortfalls at the station. He states that he was forced into writing and signing the statement after Parinello, Lafalce and Gillard called him a terrorist, and threatened him with deportation. He further states that he was physically assaulted by Gillard.

There is no question that Plaintiff did not pay back the missing money. There is also no question that on February 17, 2006, one day after Plaintiff was called to the station, Parinello contacted the Suffolk County Police. She wrote and swore to a statement setting forth the facts described above. The statement refers to Plaintiff's alleged agreement to re-pay the stolen money and states that although Plaintiff returned to the station on the agreed-upon date, he did not have the money that he agreed to pay back. Parinello states that she therefore brought the matter to the attention of the police.

Although Plaintiff alleges that the police knew that the statement confessing to the theft

4

was coerced by the Hess Defendants, there is no indication of any contact between Parinello and Suffolk County police prior to February 17, 2006, when Parinello made her statement. Nor is there evidence of any contact between any Suffolk County police officer and any other Hess Defendant prior to February 17, 2006. The criminal trial testimony cited by Plaintiff is not to the contrary. Instead, the record is clear that the contact between the Hess Defendants and the police following February 17, 2006, consists of Parinello testifying as to her version of the facts (consistent with those facts described above) when subpoenaed to appear before a grand jury and at trial, and the response of Hess to requests for documents. As to those requests, Plaintiff argues that Hess knowingly withheld exculpatory documents until the eve of trial. Parinello explains that documents previously thought to have been destroyed were discovered after Hess responded to an initial subpoena. She states that immediately upon discovery of such documents, they were provided to authorities.

Plaintiff was ultimately indicted by a Suffolk County Grand Jury on a larceny charge arising out of the incident at the Hess station. On January 11, 2007, he was acquitted of those charges. Because his visa expired while he was incarcerated, Plaintiff spent time, not only in a Suffolk County jail, but also at an immigration detention facility in Texas. On March 14, 2007, Plaintiff's attorney served a notice of claim on all Defendants named herein. The notice of claim sets forth, essentially, the same claims set forth in the complaint currently before this court. Thereafter, on July 31, 2007, Plaintiff was granted political asylum and released from federal custody. This action was commenced on February 25, 2008.

III.    The Allegations of the Complaint

As noted, the complaint includes allegations against Suffolk County authorities and

5

against the Hess Defendants. Because this motion is addressed only to the claims against the Hess Defendants, the court will detail only those claims.[2]

The federal claims against the Hess Defendants are asserted pursuant to 42 U.S.C. § 1983 ("Section 1983"), 42 U.S.C. § 1981 ("Section 1981"), 42 U.S.C. § 1985 ("Section 1985") and 42 U.S.C. § 1986 ("Section 1986"). The Section 1983 causes of action allege deprivation of Plaintiff's rights pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. The Section 1981 claims also allege violations of these Constitutional Amendments. The Section 1985 claims alleges a conspiracy, and the Section 1986 claim alleges failure to prevent that conspiracy. Plaintiff's complaint also includes several state law claims against all Defendants. Those claims assert assault, battery, intentional infliction of emotional harm, negligent infliction of emotional harm, unlawful imprisonment, malicious prosecution, and abuse of process. Plaintiff seeks compensatory and punitive damages and attorneys' fees.

IV. The Motion

The Hess Defendants move for summary judgment as to all claims. Dismissal of the Section 1983 claims is sought on the ground that the moving defendants are not state actors. The Section 1981 claim is sought to be dismissed on the grounds that: (1) Plaintiff alleges only discrimination based upon religion and national origin, and not race, as required by the statute: (2) there are no facts showing discriminatory animus, and (3) Plaintiff fails to identify deprivation of an activity covered by Section 1981. The Section 1985 claim is sought to be dismissed on the ground that Plaintiff fails to set forth either discriminatory animus, or any facts

---

[2]     Although Plaintiff originally named the United States Customs and Immigration Enforcement Agency, and "John and Jane Doe" Immigration and Customs Agents as Defendants, Plaintiff discontinued his complaint against those Defendants in August of 2008.

supporting the existence of a conspiracy. Dismissal of the Section 1986 claim is sought on the ground that dismissal of a Section 1985 claim necessarily negates a Section 1986 claim.

In addition to seeking summary judgment as to all Federal claims, the Hess Defendants seek judgment as to the State claims. The intentional tort claims are allegedly barred by the applicable one year statute of limitations. The false imprisonment and malicious prosecution claims are additionally alleged to fail for lack of causation, and the negligent infliction of emotional harm claim is alleged to be supported by insufficient evidence. After reviewing applicable legal principles, the court will turn to the merits of the motion.

DISCUSSION

I.     Standards for Summary Judgment

A motion for summary judgment is granted only if the court determines that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FRCP 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). The party seeking judgment bears the burden of demonstrating that no issue of fact exists. McLee v. Chrysler Corp. 109 F.3d 130, 134 (2d Cir. 1997). However, when the nonmoving party fails to make a showing on an essential element of its case with respect to which it bears the burden of proof, summary judgment will be granted. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

The party resisting summary judgment must not only show a disputed issue of fact, but it must also be a material fact in light of the substantive law. Only disputed facts that "might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 242.

When a moving party demonstrates the absence of a genuine issue of fact, the non-

7

moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is not defeated by vague assertions of unspecified disputed facts. Western World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d Cir. 1990).

II.     Section 1983 Claim

      A.    Legal Principles

To state a claim pursuant to 42 U.S.C. § 1983 ("Section 1983"), plaintiff must show the deprivation of a Constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." 42 U.S.C. § 1983; Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993). The alleged deprivation of a constitutionally protected right is insufficient, standing alone, to state a claim under Section 1983. A second element is required – plaintiff must prove that defendant is either a "state actor" or a private party acting "under color of state law." Adickes v. S.H. Kress & Co., 398 U.S. 144, 150 (1970); Spear v. Town of West Hartford, 954 F.2d 63, 68 (2d Cir. 1992); Valez v. City of New York, 2008 WL 5329974 *2 (S.D.N.Y. 2008) see Briscoe v. LaHue, 460 U.S. 325, 329-30 (1983). This requirement excludes from the reach of Section 1983 private conduct, "however discriminatory or wrongful." American Manufacturers Mutual Ins. Co. v. Sullivan, 526 U.S. 40, 50 (1999), quoting, Shelley v. Kraemer, 334 U.S. 1, 13 (1948).

Under certain circumstances, private conduct may "become so entwined with governmental policies or so impregnated with a governmental character as to become subject to the constitutional limitations placed upon state action ...." Kia P. v. McIntyre, 235 F.3d 749, 756-57 (2d Cir. 2000) (citations omitted). Private action may be considered to be infused with "state action" if private parties are "performing a function public or governmental in nature, and

which would have to be performed by the Government but for the activities of the private parties." Id. at 757. Significantly, the Second Circuit has held that the mere reporting of information to law enforcement is not sufficient to support a claim of state action by a private party. See Ginsberg v. Healy Car & Truck Leasing, Inc., 189 F.3d 268, 272 (2d Cir. 1999). Instead, there must be proof of a "plan, prearrangement, conspiracy, custom or policy." Id. (citation omitted); see Valez, 2008 WL 5329974 *3; see also Manbeck v. Micka, 640 F.Supp.2d 351, 379 (S.D.N.Y. 2009) (requiring a "meeting of the minds between law enforcement and private individual to support a finding of state action).

        B.       Disposition as to Section 1983 Claims

        When applying the principles set forth above to the present case, the court has no difficulty concluding that the Hess Defendants are not state actors. Neither the allegations of the complaint, nor any facts adduced during discovery, support any conclusion that the Hess Defendants acted with the authority of state law.  Instead, those facts show only that these Defendants did nothing more than report facts pointing to commission of a crime.  It matters not whether the Hess Defendants harbored any will toward Plaintiff, or that Plaintiff was ultimately acquitted of the charge.  There is no evidence that the Hess Defendants worked with Suffolk County authorities pursuant to any pre-arranged plan to "frame" Plaintiff for the theft at the station.  Even after discovery, Plaintiff has uncovered nothing to support his claim that the Hess Defendants were sufficiently clothed with the authority of the state so as to render them state actors for the purpose of Section 1983.

        Although not argued by Plaintiff, the court also rejects Plaintiff's claims to the extent that they allege a Section 1983 conspiracy between the Hess Defendants (who are not state actors)

9

and the State Defendants. A claim is stated against a private entity on a Section 1983 conspiracy

theory only upon a showing that "that the private entity acted in concert with the state actor to

commit an unconstitutional act." Spear, 954 F.2d at 68. Put differently, a private actor acts under

color of state law when the private actor "is a willful participant in joint activity with the State or

its agents." Adickes, 398 U.S. at 152 (1970), quoting, United States v. Price, 383 U.S. 787, 794

(1966). Other than Plaintiff's unsupported allegations, there is no such evidence here.

Accordingly, the court dismisses all claims pursuant to Section 1983.

III.    Section 1985 Conspiracy Claim

   A.    Legal Principles

Private individuals may be liable for conspiracy to violate the civil rights laws under 42

U.S.C. § 1985 ("Section 1985"). See Traggis v. St. Barbara's Greek Orthodox Church, 851 F.2d

584, 586-87 (2d Cir. 1988). The statute creates no substantive rights but, instead, provides a

remedy for the deprivation of rights guaranteed by the United States Constitution. Great Am.

Fed. Sav. & Loan v. Novotny, 442 U.S. 366, 372 (1979); Traggis, 851 F.2d at 586-87.

The elements of a claim under Section 1985 are: (1) a conspiracy; (2) motivated by racial

or other discriminatory animus; (3) for the purpose of depriving any person or a class of persons

of the equal protection of privileges and immunities under the law; (4) an overt act in furtherance

of the conspiracy and (5) injury. Griffin v. Breckenridge, 403 U.S. 88, 102-03 (1971); Gagliardi

v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994); Gleason v. McBride, 869 F.2d 688, 694-

95 (2d Cir. 1989).

Like conspiracy claims asserted under Section 1983, conspiracy claims under Section

1985 must contain factual allegations. Conclusory or vague allegations of conspiracy are

10

insufficient to survive a motion for summary judgment. See <u>Leon v. Murphy</u>, 988 F.2d 303, 311(2d Cir. 1993).

      B.    <u>Disposition as to Section 1985 Claims</u>

Plaintiff's conspiracy claim is based upon wholly unsupported allegations that the Hess Defendants acted in concert with Suffolk County law enforcement to have Plaintiff incarcerated for more than sixteen months. Plaintiff seeks to hold the Hess Defendants liable not only for the institution of criminal proceedings, but also for mistreatment while incarcerated, as well as Plaintiff's detention by Federal immigration officials. These allegations cannot survive summary judgment.

Upon examination, it becomes clear that Plaintiff alleges nothing more than the facts that the Hess Defendants contacted the Suffolk County police, and later testified against Plaintiff before the grand jury, and at trial. Plaintiff attempts to embellish these bare allegations with statements that the Hess Defendants were "aware of the fact that their Complaint to the Police would result in an arrest and incarceration of Plaintiff . . . [and] were aware of the fact that incarceration and conviction on these false charges would result in an immigration hold and likely deportation."

As far as being "aware," that a call to police would result in incarceration, any such awareness is not only obvious, but the clear intent of the call. Awareness of detention because of an expired visa is a state of mind that can be attributed only to the Plaintiff himself. Missing from any of Plaintiff's papers are facts to support any indication of Plaintiff's alleged far-fetched agreement among the Hess Defendants and State and Federal officials to conspire against Plaintiff by the making of false allegations. The Hess Defendants, in contrast, have come

11

forward with more than ample evidence in support of their position that Plaintiff stole from Hess. Even if that belief was ultimately mistaken, it does nothing to support Plaintiff's claims of a conspiracy to have Plaintiff arrested, incarcerated and deported. The facts show nothing more than the reporting of an alleged crime to police. The Section 1985 conspiracy claim is therefore dismissed.

IV.   Section 1986

Section 1986 provides for a cause of action for failure to prevent a Section 1985 conspiracy. 42 U.S.C. § 1986. This section is tied specifically to Section 1985, and does not set forth a general cause of action for failure to prevent any violation of Section 1983. See Graham v. Henderson, 89 F.3d 75, 82 (2d Cir. 1996); Abdi v. Brookhaven Science Assocs., LLC., 447 F. Supp.2d 221, 227 (E.D.N.Y. 2006). In view of the fact that the court has dismissed Plaintiff's Section 1985 conspiracy cause of action, the claim pursuant to Section 1986 must be dismissed. Graham, 89 F.3d at 82 (dismissing Section 1986 claim where complaint contained no allegation of Section 1985 violation).

V.   Section 1981

A.   Legal Principles

42 U.S.C. § 1981 provides:

(a) All persons within the jurisdiction of the United States shall have the same right in every State ... to make and enforce contracts, ... and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . . .

(b) For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship.

42 U.S.C. § 1981.

Unlike Section 1983, which requires state action, Section 1981 provides redress for purely private acts of racial discrimination. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000). To establish such a claim, Plaintiff must allege the following elements: (1) that he is a member of a racial minority; (2) that Defendants intentionally discriminated against him on the basis of race; and (3) that such discrimination concerned one of the statute's enumerated activities. Brown v. City of Oneonta, New York, 221 F.3d 329, 339 (2d Cir. 2000); see Pierre v. J.C. Penney Co., Inc., 340 F. Supp.2d 308, 312 (E.D.N.Y. 2004) (section 1981 provides cause of action against private individuals for racially-motivated, intentionally-inflected injury).

The Second Circuit has included employment rights as among those covered by Section 1981. See Whidbee v. Garzarelli Food Specialties, Inc., 223 F.3d 62, 69 (2d Cir. 2000). Thus, a Plaintiff alleging race-based employment discrimination by a private employer may state a claim pursuant to Section 1981. Whidbee, 223 F.3d at 69. This is true even where, as here, the employment relationship is nothing more than an at-will relationship. Lauture v. International Business Machines Corp., 216 F.3d 258, 262-63 (2d Cir. 2000); e.g., Spencer v. International Shoppes, Inc., 2010 WL 1270173 *10 (E.D.N.Y. 2010); Lloyd v. Bear Stearns & Co., Inc., 2004 WL 2848536 *14 (S.D.N.Y. 2004)

An employment discrimination claim brought pursuant to Section 1981 mirrors, in most ways, an employment discrimination claim brought pursuant to Title VII. Patterson v. County of Oneida, 375 F.3d 206, 225 (2d Cir. 2004); Constance v. Pepsi Bottling Co. of New York, 2007 WL 2460688 *14 (E.D.N.Y. 2007); Bailey v. City of New York, 2003 WL 21031972 * 6 (S.D.N.Y. 2003). There are, however, differences. See generally Patterson, 375 F.3d at 225-26.

13

Unlike Title VII, individual liability can be imposed for personal involvement in discriminatory activity that violates Section 1981. Id. at 226; see Howe v. Town of Hempstead, 2006 WL 3095819 *8 (E.D.N.Y. 2006). Additionally, Section 1981 has a more narrow reach, applying only to claims of racial discrimination. Moreover, Section 1981 addresses only intentional discrimination; it cannot be used to redress a claim of discrimination based upon a claim of negligence. Id.; Gad-Tadros v. Bessemer Venture Partners, 326 F. Supp.2d 417, 424 (E.D.N.Y. 2004); Jackson v. University of New Haven, 228 F. Supp.2d 156, 162 (D. Conn. 2002); see Lloyd, 2004 WL 2848536 *15; Bailey, 2003 WL 21031972 * 6 (S.D.N.Y. 2003). As to claims based upon a allegedly hostile environment, the same standards that the court applies in a Title VII case apply to claims brought pursuant to Section 1981. Thus, a Section 1981 plaintiff alleging a hostile working environment must show that "the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." Everson v. New York City Transit Authority, 2007 WL 539159 *32 (E.D.N.Y. 2007), quoting, Harris v. Forklift Sys., Inc., 510 U.S. 17, 21 (1993).

     B.     Disposition of Section 1981 Motion

Defendants seek dismissal of Plaintiff's Section 1981 claim on the grounds that he has not alleged, and discovery has not revealed, the essential elements of the cause of action.

The court turns first to the claim that the Section 1981 claim fails because Plaintiff fails to allege race-based discrimination. While it is clear that Section 1981 does not prohibit discrimination based solely upon non-racial factors such as religion or national origin, it is also clear that the statute's reference to "race," goes beyond the allegation of race discrimination

14

based upon a plaintiff's status as, for example, an African American. See Saint Francis College v. Al-Khazraji, 481 U.S. 604, 613 (1987) (upholding Section 1981 claim based upon Plaintiff's Arabian descent on ground that statute protects "identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics"); see United States v. Nelson, 177-78 (2d Cir. 2002); El Sayed v. Hilton Hotels Corp., 2008 WL 3362828 *7-8 (S.D.N.Y. 2008).

Under the facts here, the court holds that Plaintiff has set forth facts sufficient to bring himself within the class of individuals protected by Section 1981. The complaint makes explicit reference to discrimination based upon Plaintiff's race. While it is true that, when deposed, Plaintiff stated that he was unfairly treated because of his Pakistani birth and Muslim religion, there is enough evidence to show that he alleges discrimination based upon his racial background. Having concluded that Plaintiff properly alleges the element of "race," the court turns to consider whether Plaintiff's Section 1981 claim is otherwise sufficient to survive summary judgment.

As noted, Plaintiff's complaint alleges that the Hess Defendants deprived Plaintiff of his rights pursuant to the Fourth, Fifth, Sixth and Fourteenth Amendments to the United States Constitution. His claims against the Hess Defendants are vaguely connected to those Constitutional violations allegedly committed by the State Defendants. Thus, Plaintiff asserts that the Hess Defendants falsely accused Plaintiff of a crime, prolonged Plaintiff's detainment without probable cause, withheld exculpatory documents, and covered up the conduct of state officers and officials. The conduct of the Hess Defendants, along with the alleged unlawful conduct of the public officials named, is alleged to have subjected Plaintiff to abuse while

15

incarcerated and "unnecessary and unsubstantiated charges, detention, court appearances, and other due process violations." As already held by this court, Plaintiff has come forward with no evidence to show that the Hess Defendants acted in concert with State and/or Federal officials. The court considers, therefore, Plaintiff's claims as against the Hess Defendants, standing alone.

Facts alleged in support of claims of unlawful search and seizure, the withholding of exculpatory evidence, lack of probable cause, and unfair treatment during incarceration might state a Fourth, Fifth, Sixth and/or Fourteenth Amendment claim against a state actor, or a private actor working in concert with a state official. Such facts, however, state no claim as to purely private action alleged to have been taken by Plaintiff's co-workers, working for a private employer. The Hess Defendants do not have any responsibilities with respect to the Constitutional violations that allegedly took place in connection with Plaintiff's arrest, incarceration, and immigration-related detention. See Walter v. United States, 447 U.S. 649, 656 (1980) (search or seizure conducted by a private party does not violate the Fourth Amendment and cannot deprive the government of the right to use evidence lawfully acquired). See also Metellus v. JetBlue Airways Corp., 2010 WL 1267777 *5 (E.D.N.Y.2010) (dismissing Fourth and Fourteenth Amendment claims against private company); Pierre, 340 F. Supp.2d at 313 (dismissing Fourth Amendment claim raised against private party in context of Section 1981 action); Mitchell v. Home, 377 F. Supp.2d 361, 372-73 (S.D.N.Y.2005) (dismissing Fifth and Fourteenth Amendment claims asserted against private individuals). For the foregoing reasons, the court concludes that all Section 1981 claims alleged in the nature of alleged violations of the Fourth, Fifth, Sixth and Fourteenth Amendments must be dismissed.[3]

---

[3]     The court recognizes that the Equal Protection Clause of the Fourteenth
         Amendment can provide a vehicle for an employment discrimination claim

The court turns to consider whether, in the absence of the alleged Constitutional violations, Plaintiff's Section 1981 claim survives the motion for summary judgment. Section 1981 requires Plaintiff to show that Defendants intentionally discriminated against him on the basis of his race. A liberal review of the Plaintiff's papers reveals that he appears to allege hostile environment and wrongful termination claims. Plaintiff's hostile environment claim is based upon allegations that he was continually referred to as a terrorist and threatened with deportation. The Hess Defendants are alleged to have "repeatedly" made derogatory comments, which comments are alleged to be linked to adverse employment action. The court further construes Plaintiff's complaint and papers to allege that the Hess Defendants singled him out, on the basis of his race, accusing him of a theft that he did not commit, and thereafter terminated his employment.

For their part, the Hess Defendants point out that prior to the incident leading to his termination, Plaintiff was a trusted employee who was recommended for, and granted, a substantial salary increase by one of the named Hess Defendants. They also argue that the missing lottery money, and documents evidencing Plaintiff's guilt, show sufficient non-discriminatory reasons for Plaintiff's termination. Such evidence is argued to negate completely any inference of intentional racial discrimination.

While the court is somewhat inclined to agree with the Hess Defendants' argument, it recognizes that questions regarding intent are generally factual in nature, and the court therefore

---

against a State or Municipal employer. See Annis v. County of Westchester, 36 F.3d 251, 254-55 (2d Cir. 1994); e.g., Quinn v. Nassau County Police Dept., 53 F. Supp.2d 347, 356 (E.D.N.Y. 1999). Such a claim is stated, however, only where the defendant-employer is a state actor, and not where, as here, the employer is a private entity.

17

declines to dismiss the Section 1981 employment discrimination claim. See Schwapp v. Town of Avon, 118 F.3d 106, 110 (2d Cir.1997) (courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question). The court makes clear that the Section 1981 claims that remain are limited to employment discrimination allegations of hostile working environment, and wrongful termination. In light of this court's holdings regarding the lack of state action, and the lack of evidence of any agreement among the Hess Defendants and state actors, the Hess Defendants cannot be held liable for any Constitutional violation regarding Plaintiff's trial and/or the manner in which he was treated during his incarceration. Such claims are too remote to be attributable to the Hess Defendants alleged acts of employment discrimination.

VI.     Pendent State Claims

Plaintiff alleges state law claims based upon intentional torts as well as negligence. The intentional torts alleged by plaintiff are: (1) assault; (2) battery; (3) malicious prosecution; (4) abuse of process; (5) intentional infliction of emotional distress and (6) false imprisonment. As to negligent conduct, Plaintiff sets forth a claim for negligent infliction of emotional distress. The Hess Defendants argue that the intentional tort claims are time barred by the applicable one year statute of limitations. Summary judgment as to the sole negligence-based claim is sought on the ground of insufficient evidence.

The court recognizes, and the parties agree, that the statute of limitations applicable to Plaintiff's claims of intentional injury is one year. As to the claims of assault and battery, the one year period begins to run on the date of the Defendant's act. Since the last date that any Hess Defendant could have had any contact with Plaintiff was February 17, 2006, this action,

commenced on February 25, 2008, is untimely. Plaintiff's abuse of process claim accrued on the date of Plaintiff's arrest or indictment. Considering the later date, March 23, 2006, the action is untimely by approximately one year. As to the claim of malicious prosecution, the claim accrues on the date of a favorable termination of the proceedings. Plaintiff was acquitted on the larceny charge on January 11, 2007. The February 28, 2008 commencement of this lawsuit renders Plaintiff's malicious prosecution claim untimely. The court reaches the same conclusion regarding the untimely nature of this action with respect to the claim for intentional infliction of emotional harm. No action by any of the Hess Defendants that could possibly rise to the level required to state such a claim took place within the one year period prior to commencement of this action. Finally, the claim of false arrest is time barred because of Plaintiff's release from state custody on the larceny charge in excess of one year prior to commencement of this action. In apparent recognition of the running of the one year time period with respect to each of Plaintiff's intentional tort allegations, Plaintiff raises several arguments. None have merit.

First, the court rejects the notion that equitable estoppel requires that the one year period be tolled. The doctrine of equitable tolling is properly applied only when "the plaintiff was induced by fraud, misrepresentations or deception to refrain from filing a timely action." Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007), quoting, Doe v. Holy See (State of Vatican City), 793 N.Y.S.2d 565 568 (3d Dep't 2005) (internal quotations omitted); Andolina v. Kenny, 2010 WL 786302 *4 (N.D.N.Y. 2010)(same). There is absolutely no evidence of any such activity by the Hess Defendants. Plaintiff's own conduct in timely filing a statutory Notice of Claim, by counsel, belies any argument that he was someone deceived into failing to timely file a timely action alleging the intentional torts set forth herein.

19

Plaintiff argues that his false arrest claim is not time barred because that claim did not accrue, as argued by the Hess Defendants, when he was released from State custody. Instead, Plaintiff argues that the false arrest claim accrued only upon Plaintiff's release from Federal immigration detention – a date less than one year prior to the commencement of this action. In support of this interpretation, Plaintiff relies on Bumbury v. New York, 880 N.Y.S.2d 44 (1st Dep't 2009). There, the court held that Plaintiff remained in custody, for the purpose of accrual of his false arrest claim, during a period of Federal immigration detention that followed State incarceration. In that case, however, the Federal detention was ordered on the same basis as the detainee's State criminal charge. See Bumbury, 880 N.Y.S.2d at 46 (federal detention was "rooted in" plaintiff's sodomy conviction). Here, in contrast, Plaintiff's Federal detention was completely unrelated to the State charge. Indeed, Plaintiff was ordered released from State custody upon his acquittal. Immigration papers before the court indicate that Plaintiff was ordered detained, not because of the State larceny charge, but because he remained in this country pursuant to an expired visa. Under these circumstances, the Federal detention does not extend the accrual period of Plaintiff's false arrest cause of action, which is accordingly held to be untimely.

Even if Plaintiff's false arrest claim were deemed timely, it would nonetheless be dismissed on the merits. Such a claim fails where, as here, Plaintiff shows only that defendants reported a crime, and provided statements to law enforcement. The law is clear that there is no liability for false arrest "for merely giving information to legal authorities, who are left entirely free to use their own judgment in effecting an arrest, or in swearing out a criminal complaint so that an arrest is legally authorized." Mitchell, 377 F. Supp.2d at 376 (citation omitted). For the

foregoing reasons, all of Plaintiff's claims of intentional wrongdoing are dismissed. The court turns to consider whether the sole negligence claim survives summary judgment.

Plaintiff's complaint sets forth a claim for negligent infliction of emotional distress. Under New York law, a plaintiff may establish such a claim in one of two ways: (1) the "bystander" theory; or (2) the "direct duty theory." Mortise v. United States, 102 F.3d 693, 696 (2d Cir. 1996). As to the bystander theory, a plaintiff may recover when: (1) he is threatened with physical harm as a result of defendant's negligence; and (2) consequently suffers emotional injury from witnessing the death or serious bodily injury of a member of plaintiff's immediate family. Id. As to the "direct duty" theory, a plaintiff states a claim where he suffers emotional injury from defendant's breach of a duty which unreasonably endangered plaintiff's own physical safety. Id.; Kennedy v. McKesson Co., 58 N.Y.2d 500, 504 (1983). Plaintiff must establish a specific duty owed and not "some amorphous, free-floating duty to society." Mortise, 102 F.3d at 696; see Johnson v. Jamaica Hosp., 478 N.Y.S.2d 838, 839 (1984).

Plaintiff's claim of negligent infliction of emotional harm alleges no facts to support either the bystander or direct theory of liability. There are no claims of witnessing injury to another, or breach of any specific duty. Instead, Plaintiff argues only that the Hess Defendants' threats of incarceration and deportation are sufficient to state a claim for negligent infliction of emotional distress. They are not. The claim for negligent infliction of emotional distress is therefore dismissed.

VII.    Claims Remaining and Further Proceedings

The court has dismissed all claims pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. The court has also dismissed all pendent state law claims. The sole claims that remain are

21

employment discrimination claims alleged pursuant to 42 U.S.C. § 1981. Because those claims are based on different facts, and state a claim for injuries distinct from those alleging violation of Plaintiff's civil rights by the State Defendants, the court expresses its willingness to entertain a motion by the Hess Defendants to sever the employment discrimination claims for separate trial. In the event that the Hess Defendants wish to move for such severance, they are directed to inform the court of that intention within two weeks of the date of this order, and a briefing schedule will be established.

## CONCLUSION

For the forgoing reasons, the court grants the motion for summary judgment as to all claims asserted pursuant to 42 U.S.C. §§ 1983, 1985 and 1986. The court also grants the motion for summary judgment with respect to all pendent state law claims. The court grants the motion for summary judgment with respect to the cause of action pursuant to 42 U.S.C. §1981, to the extent that it is based upon alleged violations of the Fourth, Fifth, Sixth and/or Fourteenth Amendments to the Constitution. The court denies the motion for summary judgment with respect to the 42 U.S.C. §1981 only to the extent that it alleges claims of employment discrimination. The Hess Defendants are directed to advise the court as to its intentions with respect to a motion to sever the remaining claims as set forth herein.

SO ORDERED.

LEONARD D. WEXLER
UNITED STATES DISTRICT JUDGE

Dated: Central Islip, New York
     July   12 , 2010

22